AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court

**NORTHERN** DISTRICT OF **CALIFORNIA**

UNITED STATES OF AMERICA

V.

HEIDI SLORP, DAVID HINKEL and
JEFFREY RYAN SMITH

(Name and Address of Defendant)

2007 JUN 19 P 3: 07

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA, S.J

**CRIMINAL COMPLAINT**

CASE NUMBER: 07 70354 PVT

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about April, 2004-December, 2005 in Santa Clara county, in the Northern District of California defendant(s) did, (Track Statutory Language of Offense)

See Attachment A.

in violation of Title __18__ United States Code, Section(s) __371__

I further state that I am a(n) __U.S. Postal Inspector__ and that this complaint is based on the following
Official Title

facts:

See Attached Affidavit.

Continued on the attached sheet and made a part hereof:   ☒ Yes   ☐ No

Approved As To Form: _____
AUSA: CARLOS SINGH

_____
Name/Signature of Complainant:

Sworn to before me and subscribed in my presence,

6/19/07
Date

at

SAN JOSE, CALIFORNIA
City and State

U.S. MAGISTRATE JUDGE PATRICIA V. TRUMBULL
Name & Title of Judicial Officer

_____
Signature of Judicial Officer

This form was electronically produced by Elite Federal Forms, Inc.

Attachment to Criminal Complaint

**Count One**: Conspiracy

      Between April 2004 and December 2005, in the Northern District of California and elsewhere, the defendants, Heidi Slorp, David Hinkel and Jeffrey Ryan Smith did knowingly and intentionally conspire to steal U.S. mail in violation of 18 U.S.C. § 1708 and possess unauthorized access devices in violation of 18 U.S.C. § 1029(a). In so conspiring, the defendants committed the overt acts alleged in the criminal complaint affidavit. All in violation of 18 U.S.C. 371.

**Maximum Penalties**:
5 years imprisonment
$250,000 fine
3 years supervised release
$100.00 special assessment

| | |
|---|---|
| UNITED STATES DISTRICT COURT | ) |
| | ) ss    AFFIDAVIT |
| NORTHERN DISTRICT OF CALIFORNIA | ) |

I, Byron L. Dare, United States Postal Inspector, United States Postal Inspection Service, being duly sworn, depose and state:

## I. INTRODUCTION AND PURPOSE OF AFFIDAVIT

1.  I am employed as a federal agent with the U.S. Postal Inspection Service and have been so employed since April 21, 1979. I am currently assigned to the External Crimes Team in San Jose, CA, where my duties include the investigation of burglary, robbery, identity theft and theft of U.S. Mail.

2.  During the past 28 years I have received formal instruction from United States Postal Inspectors, Assistant United States Attorneys, attorneys from the California Department of Justice, and other federal, state, and local law enforcement agents who have done extensive work in investigating identity theft, mail fraud, mail theft, burglary, and robbery. In addition I have taught numerous formal classes in identity theft, mail theft and mail fraud to law enforcement and community groups.

3.  This affidavit is in support of a criminal complaint and arrest warrant for Heidi Slorp (hereinafter "Slorp"), David Hinkel (hereinafter "Hinkel") and Jeffrey Ryan Smith (hereinafter "Smith"), in connection with an investigation into conspiracy to steal U.S. Mail and possess unauthorized access devices; in violation of Sections 371 (and 1708 and 1029) of Title 18 of the United States Code.

## II.    OVERVIEW

4.  Based upon evidence recovered from the residence of suspects Heidi Slorp and David Hinkel, the statements of suspects Slorp, Hinkel and Smith, as well as interviews of victims and bank fraud investigators, I believe that Slorp, Hinkel and Smith engaged in a conspiracy to commit mail and identity theft and fraud. The object of the conspiracy between Slorp, Hinkel and Smith was to fraudulently obtain money and property by using false identification documents, stolen credit card numbers and counterfeit checks. Slorp, Hinkel and Smith obtained personal identifying information, such as the names of others, dates of birth, checking account numbers and credit card numbers by stealing mail, burglarizing cars and compromising information obtained while employed by different companies. Hinkel and Smith then manufactured false identification documents that allowed them to counterfeit checks and make purchases of goods.

III. **FACTS SUPPORTING PROBABLE CAUSE**

5. The facts contained in this affidavit are known to me as a result of my personal participation in this investigation or were related to me by other law enforcement officers and witnesses, either personally or by their reports.

6. On or about May 19, 2004, the Postal Inspection Service received a complaint from Richard P. Oubre of San Jose, CA. Richard Oubre and his wife Jodie Oubre were interviewed by Postal Inspector J.H. Chung on May 20, 2004. Jodie Oubre stated that on March 15, 2004, outgoing mail containing checks was placed in their mailbox in front of their residence. On March 16, 2004, a neighbor notified them that their letters were found on the street a few blocks away. The checks had been stolen and the envelopes discarded.

7. In early April, 2004, the Oubres became aware of three counterfeit checks totaling $383.18 that had been presented against their checking account with the Meriwest Credit Union in San Jose. The checks had their bank account number but had the name of Jopit Roldan of Daly City as the maker. (As noted below, Roldan is also a victim of fraud.) Jodie Oubre filed a police report with the San Jose Police Department on April 5, 2004.

8. Throughout April and May, the Oubres received collection notices from merchants demanding payment for unpaid checks. The notices contained checks printed with an unfamiliar Bank of America account number and the Oubre's name and address. Other notices were addressed to James B. Whitehead using the Oubre address. Richard and Jodie Oubre stated to Inspector Chung that they did not know Jopit Roldan or James Whitehead nor had they authorized any other party to use or have access to their checking account.

9. Three counterfeit Richard Oubre checks were cashed at Paramount Imports located at 455 Meridian Avenue, San Jose, California. Employee Benjamin Reese was interviewed on May 20, 2004 by Inspector Chung concerning three fraudulent Richard Oubre checks using Oubre's Bank of America account number that had been passed at the store on April 17th and 18th of 2004. Reese described a young, 6 foot tall Caucasian male with brown hair and a slender build who had browsed for 30 minutes on April 18th before purchasing some expensive water pipes. He had been accompanied by a slender Caucasian female with curly shoulder length brown hair for whom the subject had purchased earrings. The suspect had paid for the purchase with a personal check and had presented a California Drivers License in the name of Richard Oubre.

10. On May 21, 2004, John Galindo, Fraud Investigator, Bank of America, told Inspector J. H. Chung that a fraud had been committed against Bank of America account number 10470-02293 belonging to Lee Pimental. On May 27, 2004, Lee Pimental was interviewed at his San Jose residence by Inspector Chung. Pimental stated that on the night of March 14, 2004, outgoing letters containing checks for his house payment, phone and credit card bills were placed in his mailbox. Sometime in April, he became aware that his payments had not been received and that counterfeit checks had been made against his Bank of America checking account using the names and addresses of Richard Oubre and James

B. Whitehead, 915 E. Homestead Rd., Sunnyvale, California. Pimental closed the account and filed a report with the San Jose Police Department. Twenty-eight checks in the amount of $3883.85 were charged against the account. Pimental stated he did not know Oubre or Whitehead and had not given permission to any other party to use or access his checking account.

11.     On June 2, 2004, Paramount Imports owner John Sargeant contacted Inspector Chung and stated that on May 23, 2004, a suspect matching the description of the person who had passed the counterfeit Oubre checks on April 17th and 18th, 2007, had passed another counterfeit check in the name of Scott M. Burke of 6742 Elwood Rd., San Jose.

12.     Mr. Scott M. Burke was interviewed by Inspector Chung on June 3, 2004 at his residence. He stated that on the night of April 22nd, nine letters containing checks had been deposited at the collection box in front of the U.S. Post Office on 21300 Almaden Road in San Jose. On May 11, 2004, he discovered that counterfeit checks using his San Jose Credit Union checking account number had been presented to area merchants. Burke suffered over $1600.00 in charges against his account before it was closed. The Inspection Service is aware of forty-six checks in the amount of $6795.56 that were presented against the account. Burke had not given permission to any other party to use or access his bank account.

13.     On June 5th, 2004, surveillance videos and a counterfeit Burke check were received by Inspector Chung from Pet Club # 7 on 5625 Snell Rd., San Jose. The videos dated May 7, 2004 and May 19, 2004 reveal a 6 foot tall, slender Caucasian male in his late 20's to early 30's presenting a check at the register. After paying with checks, later discovered to be counterfeit Burke checks, the male left the store accompanied by a slender Caucasian female with dark curly hair who is a few inches shorter than the suspect.

14.     On June 17, 2004, Jopit Roldan was interviewed by telephone by Inspector Chung concerning checks bearing his name on the Oubre account. Roldan stated that his checks had been stolen and his checking account had been compromised for over $3000. Roldan was not aware of the Oubre checks bearing Roldan's personal information nor had Roldan given anyone permission to use or access his personal information or accounts.

15.     On July 1, 2004, Jeff Britton, Security Officer at Safeway, reported to Inspector Chung that checks in the name of James Whitehead using the Lee Pimental account were passed at Safeway stores on April 5, 2004. They had been used to purchase gift cards for Sears ($100), Shell ($50) and CompUSA ($100, $100, $100, $25). All the cards had been activated.

16.     On August 18, 2004, Inspector Chung received San Jose Police Report 04-096-1365. It detailed a forgery attempt at the Safeway store located at 179 Branham Lane, San Jose, California on April 5, 2004. A male subject had attempted to pass a forged check in the name of James Whitehead. When Safeway Manager Kimberly Wyman began to phone the police, the subject and a male associate fled the store. Wyman reported the suspects fled in a small white hatchback with the license plate 4HSM428, a 2000 Chevy

Metro.

17.     On July 6, 2004, Patrick Moore, Regional Loss Prevention Officer for CompUSA, confirmed that gift cards had been activated, combined into one gift card, and used on April 5, 2004 to purchase a Sony digital camera. The remaining credit on the CompUSA gift card was used on April 6, 2004 to purchase accessories for the camera, which included a memory stick and a camera bag. The purchase on April 6 was made with a CompUSA employee discount under the name of David Ybarra. Inspector Chung learned from Natalie Johnson, general manager of CompUSA, that Mr. Ybarra is an assistant sales manager at CompUSA.

18.     On September 7, 2004, David Ybarra was interviewed by Inspector Chung and stated that on April 6, 2004, he was approached by a former co-worker named "David" who worked with him at HP Pavilion four or five years earlier. "David" asked him if Ybarra could help him purchase some items with an employee discount, and Ybarra agreed.

19.     Mr. Ybarra gave a description of "David" as being approximately 6 feet tall, slender, Caucasian male with short brown hair. Ybarra stated that "David's" age was in the 30's but that he was young looking. Ybarra could not remember the last name of the suspect, but provided the name of his former boss at HP Pavilion who could supply it. Ybarra also gave a description of the subject's girlfriend who was there at the time of the purchase. She was a thin, Caucasian female with curly brown shoulder length hair who was a few inches shorter than "David".

20.     On September 8, 2004, Geoff Pepe of HP Pavilion advised Inspector Chung that "David" was David Hinkel, a former employee at HP Pavilion. A criminal check showed that David Hinkel had a criminal history that included charges of theft of mail, possession of controlled substances for sale, and possession of fraudulent identity cards and stolen access cards.

21.     On October 2, 2004, a photo lineup was shown to David Ybarra of CompUSA. Mr. Ybarra pointed to the picture of Hinkel and stated, "That's him. That's Dave (Hinkel)." When Ybarra was asked if the person he identified was the person who used Ybarra's CompUSA employee discount to purchase items on April 6, 2004, Mr. Ybarra replied "yes".

22.     On September 22, 2004, Santa Clara County Probation Officer Mike Tresemer advised that he was the probation officer for David Hinkel. Officer Tresemer said that Hinkel was on a non-reporting probation status until March of 2006 and that Hinkel lived with his girlfriend Heidi Slorp. A criminal check on Heidi Slorp revealed a criminal history that included possession of a controlled substance, possession of fraudulent identity cards and forgery. Santa Clara County Probation Officer Thang Tran stated that Slorp was on probation until March of 2006 for fraud and that she lived at 98 13th St., Apartment C in San Jose with her boyfriend David Hinkel.

23.     The U.S. Postal Service provided information that 98 13th St., Apartment C was one of three units in a former single-family residence. Mail going to Apartment C had been addressed to Katelyn Hinkel and Heidi Slorp.

24. On October 13, 2004, Probation Officers Tresemer and Tran provided Inspector Chung with handwriting samples of Hinkel and Slorp. The handwriting from the "Whitehead" counterfeit checks is similar to the known handwriting of David Hinkel.

25. On January 27, 2005, Inspector Chung surveiled the residence of Hinkel and Slorp at 98 South 13th Street, Apartment C. In the driveway of the residence was a tan Dodge Shadow with the license plate 3WIT634, which the California Department of Motor Vehicles reported was registered to David Hinkel. Also parked there was a white Chevrolet Metro with the license plate 4HSM428, which matched the license plate and description of the vehicle that was identified as being driven by the male subjects who presented a counterfeit check in the name of James Whitehead at the Safeway store on April 5, 2004.

26. On March 16, 2005, a federal search warrant was served at the residence of David Hinkel and Heidi Slorp. Present at the search was Heidi Slorp and her daughter. While the residence was being searched, Slorp was read her rights per Miranda and agreed to be interviewed.

27. Initially, Slorp denied any knowledge of illegal activities and stated nothing would be found in the house except a small quantity of marijuana. Slorp verified that both she and her boyfriend Hinkel were on probation. Slorp admitted that she had been convicted of credit card fraud, and that Hinkel used to do counterfeit checks with a friend Jeff Smith over two years ago.

28. The search of the residence revealed the names and credit card numbers of "David Eu" and "Susan Kellogg Smith" on a paper CD cover located inside the purse of Heidi Slorp used as a diaper bag. Slorp initially stated that Hinkel placed the CD cover in the purse/bag. Slorp eventually admitted that she found the credit card numbers in Hinkel's pants pocket the previous evening and meant to confront him with it later. Slorp confessed that she has been finding credit card numbers around the residence that have been illegally obtained by Hinkel. Slorp claimed that she has confronted Hinkel and discarded the credit card numbers in the past. Slorp admitted to knowing that possession of the numbers is a crime.

29. When asked about the CompUSA purchase made with a fraudulently purchased gift card, Slorp acknowledged the card was given to them by Jeffrey Ryan Smith and that she was with Hinkel when the card was redeemed. Slorp stated that Smith was a mail thief and was an active counterfeit check writer. Slorp identified Smith from surveillance videos.

30. Slorp stated that she witnessed Hinkel and Smith write counterfeit checks in the summer of 2004. Slorp admitted to knowing that Hinkel did not have a checking account. During that summer, Slorp recalled an incident at a Safeway store where Hinkel and a friend attempted to present a counterfeit check. Hinkel and his friend escaped in the Chevy Metro after failing in their attempt.

31.     Recovered in the search at 98 South 13th Street, Apartment C, San Jose, California were two computers, 5 credit card numbers, printed receipts for online orders and a small quantity of a green leafy substance Slorp identified as marijuana. Slorp identified the Dodge Shadow vehicle with California license plate 3WIT634 as her car and consented in writing to a search of the vehicle. A search of the vehicle revealed a receipt from Red Rocket Hobby Shop.

32.     During the afternoon of March 16, 2005, David Hinkel was interviewed by Inspector J.H. Chung at the US Postal Inspection Service San Jose Domicile. Hinkel was first read an official Inspection Service Warning and Waiver of Rights form per <u>Miranda</u>. Hinkel waived his rights and signed the form.

33.     Hinkel stated that he and Jeffrey Ryan Smith had been involved in the production of counterfeit checks. Hinkel detailed the training he had provided Smith in the manufacture of checks, which included the theft of mail from residential mail boxes to obtain the checking account numbers and the use of magnetic ink in their production. Hinkel added that Smith rewarded him for the training with the gift cards that Hinkel used at CompUSA on April 5, 2004 and April 6, 2004 to purchase items including a Sony digital camera and memory stick. Hinkel stated he was aware that the gift cards were purchased by Smith with counterfeit checks.

34.     Hinkel admitted he and his friend referred to by initials D. J. had stolen mail in the past to obtain checking account numbers. Hinkel stated he no longer steals mail.

35.     Hinkel was shown photocopies of counterfeit checks presented against the Bank of America checking account of Lee Pimental using the payer information of James Whitehead. Smith reluctantly identified some of the checks he wrote and initialed them. When shown a spreadsheet listing the above described checks, Hinkel acknowledged he was responsible for all of the James Whitehead checks. Hinkel stated the checks were manufactured and given to him by Jeffrey Ryan Smith.

36.     Hinkel divulged that he was present when Smith presented counterfeit checks using counterfeit California Drivers Licenses (hereinafter "CDL"). Hinkel recalled Smith had used the counterfeit CDL and counterfeit checks bearing the name of Scott Burke.

37.     Hinkel believed that Smith had learned to make CDL's from his girlfriend referred to by initials N.G. Hinkel remembered an incident where N.G. produced stolen mail from the trunk of Smith's 1998 black Lexus vehicle after one of Smith's many arrests. N.G. bragged it had been overlooked by police.

38.     When asked about the credit card numbers found at his residence, Hinkel admitted that he stole them from customers who had placed orders with his employer, TEM Filter in San Jose. Hinkel admitted placing fraudulent online orders using the stolen credit card numbers and believed evidence of the orders would be on the computer. When shown the receipt for Red Rocket Hobby obtained from the Dodge Shadow, Hinkel replied it was an order he placed using a stolen credit card number. Hinkel stated many of the fraudulent orders would be from hobby shops.

39. On April 1, 2005, Customer Service Manager Michael Luka of Red Rocket Hobby Shop recognized the order from the receipt found inside the Dodge Shadow on March 16, 2005. Luka stated a fraudulent order in the amount of $759.93 had been placed, although their actual losses amounted to $218.94.

40. On April 1, 2005, Inspector Chung spoke with US Bank Senior Fraud Investigator Carolyn Billecci. Billecci stated that the corporate credit card of "Susan Kellogg Smith", which Inspector Chung had recovered at the Hinkel residence, had two fraudulent orders placed with A Main Hobbies in Chico, California. The orders were placed on March 14 and March 15, 2005 for the amounts of $830.72 and $158.86, respectively.

41. Inspector Chung interviewed Accountant Qing Wang of Impenix concerning the corporate card of "David Eu" recovered at the Hinkel residence. Wang stated their firm had disputed four or more fraudulent orders placed with Ehobbies in La Mirada, California. A customer service representative from Ehobbies stated that five online orders were placed using the Eu card in the amounts of $400.00, $150.00, $681.34, $55.88 and $551.10 on March 12, 2005 and March 13, 2005.

42. On April 5, 2005, Business Manager Bob Dunkel of Al's Hobbies in Elmhurst, Illinois was interviewed by Inspector Chung regarding a credit card number which Inspector Chung had recovered at the Hinkel residence and identified as belonging to KLA Tencor. Mr. Dunkel stated to Inspector Chung that a fraudulent order had been placed on February 12, 2005 for approximately $860.00 using the credit card number.

43. On April 18, 2005, Inspector Chung interviewed Hinkel when he arrived at his residence. Hinkel was read the Warning and Waiver of Rights per <u>Miranda</u> and waived his rights. Hinkel was asked about the hobby shop orders mentioned above. Hinkel admitted he was responsible for the fraudulent online orders using at least seven stolen credit card numbers. Hinkel was then shown a copy of the forensics report. Hinkel again identified and initialed the fraudulent orders he placed.

44. On March 18, 2005, a search of the California Law Enforcement Telecommunications System (CLETS) and queries with the California Department of Motor Vehicles (DMV) showed a Jeffrey Ryan Smith with a date of birth of September 25, 1981 as a suspect closely matching the descriptions given by Hinkel and Slorp. The criminal history report of Smith revealed numerous arrests including arrests for grand theft, identity theft and forgery. On April 18, 2005, Inspector Chung interviewed Heidi Slorp at her residence. Slorp positively identified a photo of Jeffrey Ryan Smith as being the subject she had identified during her interview on March 16, 2005. Slorp provided additional statements on Smith.

45. On May 13, 2005, Inspector Chung spoke with Santa Clara County Deputy District Attorney Angela Bernhard. Bernhard confirmed that Jeffrey Ryan Smith and others had been arrested by San Jose Police on June 13, 2004. Smith had been charged and had pled guilty to burglary, possession of stolen property, forgery, and possession of false ID's to commit forgery. Smith has not been prosecuted for the checks belonging to the victims mentioned above in this case.

46. On May 27, 2005, Inspector Chung met with San Jose Police Officer Nathan Trang and received from Trang evidence obtained during the arrest of Smith on June 13, 2004. Among the items recovered during the arrest were mail, indicia in the name of others, a computer, a notebook containing the names and addresses of victims including Oubre, and counterfeit CDL's including one in the name of victim Scott Burke with the photograph of Jeffrey Ryan Smith

47. On December 13, 2005, Inspector Chung interviewed Jeffrey Ryan Smith at the Offices of Cameron Watt, Attorney at Law. In the presence of attorney Cameron Watt and Reginald Smith, father of Jeffrey Ryan Smith, Inspector Chung read the Warning and Waiver of Rights per _Miranda_ to Jeffrey Ryan Smith. Jeffrey Ryan Smith agreed to waive his rights and signed the form, which was witnessed by Reginald Smith.

48. Smith verified that David Hinkel had taught him how to produce counterfeit checks. Smith stated he obtained the checking account numbers by stealing mail and committing car burglaries.

49. Smith recalled he and his friend referred to by initials B.D. would steal mail by driving up to mail boxes in his Lexus vehicle. Smith looked for flags on the mailboxes indicating outgoing mail. Smith described mornings as the best time to steal mail because people would place their outgoing mail to pay bills in their mail boxes before leaving for work. Smith stated he was most interested in stealing mail that contained bank statements, bill payments, DMV related information and social security information. Smith admitted he would go out nearly every night to steal mail. Smith stated he sometimes gave the mail to friends, though he normally kept it to commit fraud for himself.

50. Smith was shown photocopies of counterfeit checks using the payer names of Jopit Roldan, Richard Oubre and Scott Burke. Smith recognized each of the names and stated he was responsible for the counterfeit checks using those identities. Smith studied the spreadsheet listing the counterfeit checks and initialed the checks he was responsible for.

51. Smith revealed he passed the counterfeit checks using counterfeit CDL's of the three victims he had manufactured using Adobe Photoshop. Smith identified himself and his friend Brandon Dickinson in various surveillance videos collected during the course of the investigation.

52. On October 11, 2005, Inspector Chung submitted the counterfeit checks gathered in the course of the investigation to the US Postal Inspection Service Forensics and Technical Services for fingerprint analysis. On February 23, 2006, Inspector received a report from Forensic Latent Print Analyst Jeffery May who reported that the latent prints of Jeffrey Ryan Smith appeared on six counterfeit Richard Oubre checks and three counterfeit Scott Burke checks.

## IV.     CONCLUSION:

Based on the facts set forth in this affidavit, your affiant submits that probable cause exists that Heidi Slorp, David Hinkel and Jeffrey Ryan Smith conspired to steal U.S. mail and possess unauthorized access devices in violation of Title 18 U.S.C. Sections 371 (and 1708 and 1029). Therefore your affiant requests that a criminal complaint and arrest warrant be issued for Heidi Slorp, David Hinkel and Jeffrey Ryan Smith.

_____
Byron L. Dare
U.S. POSTAL INSPECTOR


Sworn to and subscribed before me this 19th day of June, 2007, at 2:55 pm hours.

_____
PATRICIA V. TRUMBULL
United States Magistrate Judge